Crabtree *v.* The State.

---

### CRABTREE *v.* THE STATE.

JUDGE'S CHARGE. *Law. Evidence.* A judge in his charge to the jury "may state the facts and declare the law." To declare the law means that he is to charge the law arising upon the evidence. He is not bound to charge every principle of law that may be insisted upon by counsel whether applicable to the case or not.

---

#### FROM CAMPBELL.

Appeal in error from the Circuit Court of Campbell county. D. K. YOUNG, J.

HENDERSON & JOUROLMAN for Crabtree.

ATTORNEY GENERAL LEA for the State.

DEADERICK, C. J., delivered the opinion of the court.

At the March term, 1878, of the Circuit Court of Campbell county, Crabtree was convicted of voluntary manslaughter, and sentenced to two years imprisonment in the penitentiary. A new trial was refused, and he has appealed in error to this court.

Murphy, the deceased, is shown to have been a man of violent and dangerous character, and during the day on which he was killed, was shot three times by Crabtree upon insufficient provocation. The last two shots were discharged almost simultaneously by Crabtree from a pistol held in each hand.

None of these shots inflicted dangerous or very serious wounds; one ball passed through his ear, another in the fleshy part of his right arm, and the third barely penetrated his flesh in the breast. He however complained of being hurt, and asked to be taken to the house at which he had been staying, some two miles or more distant.

Crabtree and others went along the same road with him, and, as some of the witnesses say, Crabtree went reluctantly, and at the repeated request of Murphy. On the way Murphy laid down to rest and his head was resting on his arm; while in this position, one of the witnesses says he frequently put his other hand upon his breast, and that one Marcum, who is jointly indicted with him, and one of the witnesses, told Crabtree that Murphy had said he wanted to toll Crabtree to where he lived and would then scatter his brains in the yard. Crabtree asked them if they

would swear that, and they said they would, and thereupon Crabtree, who was four or five steps from Murphy, and at his back, raised an army gun and shot him in the back of the head, killing him instantly.

Marcum and the witness were four or five steps from Murphy when telling Crabtree what Murphy had said. Murphy did not move at the time he was shot, nor did he see Crabtree when he shot, but as the conversation was in an ordinary tone he probably heard it, and said, "you can kill me," just as Crabtree shot.

Two grounds of reversal are insisted upon.

Defendant offered to prove that Murphy had made threats on the road between the places where the second and the last shots were fired. Upon objection by the Attorney General, that the threats were not at that time communicated to defendant, the evidence was rejected.

The witness, however, in a short time after, proceeded to detail the threats of Murphy, to the effect that he would kill Crabtree as soon as he got him to the place where he, Murphy, lived, and that he was persuading Crabtree on and would leave his brains in the yard as soon as he got him there. These are undoubtedly the threats which the defendant proposed to prove, as the same witness who proves them says Murphy persuaded Crabtree to go home with him. They were admitted to the jury without objection, and the error of their rejection in the first instance was cured.

It is next insisted that the court erred in refusing to give instructions requested by defendant as to the right of self defence.

The instructions asked were in substance, "if the deceased was a deadly enemy of defendant; if he had previously made attempts or threats against the life of the defendant, and was known to be a person of violent and dangerous character, likely to execute his threats, then a very slight movement on the part of the deceased, may justify the defendant in acting in his self defense; and it need not appear that at the time of the fatal shot, the defendant was in any real danger, but it is sufficient, if, at the time, it reasonably appeared to the defendant, situated as he then was, that the deceased was doing, or beginning to do, any act that would put the defendant in danger of great bodily harm."

The court refused to charge as requested, because he did not think such charge "applicable to the facts of the case."

A judge in his charge to the jury "may state the facts and declare the law."

To "declare the law," means that he is to charge the law arising upon the evidence. He is not bound to charge every principle of law that may be insisted on by counsel, whether applicable to the case or not. And in *Conner* v. *The State*, 4 Yer., 137, it is said, "if a principal of law be stated and insisted on by counsel, which has no application to the facts of the case, it is the duty of the court to tell the jury it has no application lest they be misled by it."

The deceased was shot by defendant while he was lying upon the ground, unarmed, with his back to his assailant, suffering from the wounds he had previously

inflicted upon him. He made no movement towards assaulting defendant, did not see him when he shot, and although from his remark "you may kill me," probably overheard what had been told to Crabtree, seems not to have made the slightest effort to avert the shot or blow he seemed to apprehend.

Under such circumstances there were no facts in the case attending the shooting to which the principle of law, which defendant requested the judge to charge, could apply, and there was no error in his refusing to do so.

There is no error in the record against the defendant, and the judgment will be affirmed.